George E. HILL, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21162.

United States Court of Appeals
District of Columbia Circuit.

Argued April 18, 1968.

Decided Nov. 7, 1968.

Bastian, Senior Circuit Judge, dissented in part.

Mrs. Jean F. Dwyer, Washington, D. C. (appointed by this court) for appellant.

Mr. Lawrence Lippe, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and R. Kenly Webster, Asst. U. S. Attys., were on the brief, for appellee.

Before BASTIAN, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant was convicted on all counts of an indictment embracing two charges of robbery and one of housebreaking, all counts involving the Jumbo Food Stores, Inc., in the District of Columbia. Count 1 charged appellant with breaking and entering the store on September 23, 1966. Count 2 charged that on that date, by force and violence, he took from the person and from the immediate possession of one Arthur G. Tino (Jumbo's Manager), money and property belonging to Jumbo Food Stores, Inc., in the sum of $4,001.00. Count 3 charged that, on November 7, 1966, by force and violence appellant again stole and took from the person of Arthur G. Tino, Jumbo's property, cash in the sum of $1,280.00.

Appellant protests the denial of his motion for severance of Counts 1 and 2 from Count 3. He was found guilty on all counts and sentenced. We reject the claim that the denial of severance of counts requires a reversal. However, we think there was error in the limitation of appellant's presentation on a motion to suppress evidence, and remand for further proceedings.

1. SEVERANCE OF COUNTS

■■ Appellant argues that the District Judge erred in denying the motions for severance. We think the District Court was within the scope of its discretion under Fed.R.Crim.P. Rule 8(a) and Rule 14. The initial joinder was within the ambit of Rule 8(a).[1] The offenses charged were of the same character; the robberies were close in time, and victimized the same store. However, a proper joinder in the first instance under Rule 8(a) does not settle matters. The trial judge is under a "continuing duty at all stages of the trial" to grant severance, on application by a defendant, showing prejudice as required by Rule 14.[2]

Sometimes a defendant can, at the outset, make a reasonable showing of the likelihood of prejudice if severance is denied. Sometimes the district judge may conclude, in the exercise of discretion, that prejudice is unlikely and that consolidated proceedings are in the interest of the administration of justice. A prosecutor or court scanting the problem of prejudice in the interest of expediting judicial administration runs the risk of retarding the process if prejudice, following in the wake of consolidation—even when due in part only to inadvertence of the prosecution or court—requires a reversal. *See* Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

■ In the case before us joinder at trial did not erupt in prejudice to defendant over and above that inherent in all joinder of offenses of common character. There were two distinct offenses; the testimony enabled the jury to distinguish between them, and they were responsibly separated from each other by counsel and by the trial judge, who re-

---

1. Rule 8(a): "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

2. *See* Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960), where the Supreme Court noted that even though joinder may be initially proper, the trial judge has a "continuing duty at all stages of the trial" to grant severance if prejudice appears.

viewed meticulously and separately the evidence as to each offense.[3]

Tino's "identity" testimony singling out defendant as malefactor in both crimes might well have been admissible if charges had been pressed in two separate trials.[4] We need not decide the point as such; the fact that the evidentiary question is as close as it is serves to allay any fear that defendant has been dealt with unjustly. We decline to hold that the District Court's denial of severance constitutes reversible prejudice.[5]

## II. LIMITATION OF HEARING ON MOTION TO SUPPRESS

Appellant's main point protests the denial of his motion to suppress papers taken from his person, and the admission of testimony as to an identification made after his arrest.

Pertinent background includes the fact that appellant was arrested on November 8, 1966, the day after the second robbery, for making major repairs of his automobile in a public thoroughfare.[6] The arrest was made by Detective Wesley who knew of the two grocery store rob-

---

3. *Compare* Schaffer v. United States, *supra* note 2, 362 U.S. at 515, 80 S.Ct. at 948 where the court said, in a case involving joinder of defendants under Rule 8(b): "This charge meticulously set out separately the evidence as to each of the petitioners and admonished the jury that they were 'not to take into consideration any proof against one defendant and apply it by inference or otherwise to any other defendant.'"

4. The general rule that evidence of other crimes committed by defendant is inadmissible is subject to exceptions. Many courts admit such evidence when the offenses to be proved and the one at bar are characterized by such a similar and distinctive modus operandi that the criminal may be thought to have left his "signature" on the acts. *See* C. McCORMICK, HANDBOOK OF THE LAW OF EVIDENCE 328 (1954); *cf.* Gray v. United States, 123 U.S.App.D.C. 39, 356 F.2d 792 (1966). Under another exception evidence of other offenses is admissible if it will help identify the perpetrator of the crime. *See* C. McCORMICK, *supra* at 330; II WIGMORE, EVIDENCE § 496, at 394 (1940).

5. Definition of the zone of reversible prejudice is by no means an easy task, and a reasoned exercise of discretion by the trial judge on the facts of the particular case must be accorded appropriate respect.
   That what we confront is a zone of prejudice, and not a single boundary line, is evident upon examination of the rules of evidence as to admissibility of testimony of other crimes. When factual prejudice is at its height, legal prejudice may be non-existent, as is the case with introduction of evidence that defendant has committed other crimes with the same distinctive modus operandi. *See* note 4, *supra*. But the possibility of confusion of the jury remains a serious consideration. Even when evidence of one crime is in or near the zone of admissibility to prove the other, prejudice may result if the handling of the evidence at introduction, on argument, or in instructions, tends to blur the limited, evidentiary use. When the issue is doubtful, ultimate wisdom may lie in separation rather than combination. *Cf.* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

6. Part I, Traffic and Motor Vehicle Regulations § 81 (1960) provides: "No person shall park a vehicle upon any roadway for the principal purpose of: (a) * * * repairing such vehicle except minor repairs necessitated by an emergency." This offense is punishable by "a fine of not more than $300 or imprisonment of not more than 10 days, or both." Part I, § 158.
   The underlying authority apparently derives from the District of Columbia Traffic Act, 1925, codified as D.C.Code § 40–603 (1967). Paragraph (f) of § 603 gives the commissioners authority to establish and designate arterial and boulevard highways, and provides for "making such other regulations with respect to the control of traffic as are deemed advisable."
   Paragraph (g) authorizes the commissioners to prescribe reasonable fines and imprisonment not to exceed ten days for violation of any regulation promulgated under the authority of the act. Paragraph (i) prescribes that prosecutions for violation of the traffic act, except for violation of the smoke-screen provision, shall be at the instance of the corporation counsel and in the name of the District of Columbia.

beries, and also knew that Mr. Tino had tentatively identified appellant from a photograph. Detective Wesley took appellant into custody and to the precinct station house, where he directed appellant to empty his pockets and relinquish their contents, which included a bill of sale for a car purchased the day of the second hold-up. Appellant challenges denial of the motion to suppress this item, and its admission in evidence.

Appellant Hill was further detained at the precinct to await processing through the Identification Bureau. Meanwhile Mr. Tino was telephoned by Detective Wesley and requested to come to the station house, where he observed appellant and made a positive identification. Appellant also challenges the admission into evidence of this identification testimony.

■■ In general, a police officer may arrest without warrant anyone who commits an offense in his presence [7] and as an incident of the arrest, search the subject for weapons.[8] Items seized on such a search may be used at trial. These doctrines are, however, subject to restriction and limitation where the arrest is a sham,[9] or where the search exceeds permissible bounds.[10] Appellant's contention at trial was that his arrest for the traffic infraction was a "sham," a mere pretext to detain him and gather evidence which would support Mr. Tino's earlier identification.

■ At the hearing on the motion to suppress defense counsel sought to inquire into the nature of police routine followed in the case of such offenders. Failure to permit this line of questioning was error.[11] A foundation for this exploration was laid when defense counsel established not only the nature of the offense alleged to have occasioned the arrest, but also that the arresting officer was a detective who was aware that the robbery victim had identified defendant from a photograph, and that when defendant was brought to the station house, he was subjected to comprehensive and necessarily time-consuming Identification Bureau procedures. Defense counsel was entitled to establish, if it be the fact, that this procedure was extraordinary for the offense charged, and therefore should have been accorded reasonable latitude in his effort to develop facts as to routine procedure in order to lay the ground work for an inference that a pretext was being used when defendant was arrested, brought to, and detained and searched at the station house, all on an offense of blocking the roadway, and that this procedure was really being followed only because appellant was under suspicion of robbery.[12]

Our remand rests on appellant's right to object to and suppress evidence seized because crucial portions of the procedure

7. D.C.Code § 4–140 (1967), as amended, Supp. I (1968). Hutcherson v. United States, 120 U.S.App.D.C. 274, 277, 345 F.2d 964, 967, cert. denied 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965).

8. See Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

9. See Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961).

10. See United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932).

11. Defense counsel also sought to elicit testimony from the arresting officer as to the frequency of arrest for such in-

fractions. Absolute numbers of arrests, even if small or none, might only indicate the infrequency of such violations. But this question might have been intended as part of a more meaningful and material inquiry as to usual practice, in an effort to show that in cases of such infractions the standard routine is not to arrest nor to make a booking with a search.

12. Taglavore v. United States, 291 F.2d 262, 265 (9th Cir. 1961). "It is a matter of common knowledge, and it was admitted by one of the arresting officers at the trial, that it is not ordinary police procedure to physically take a person into custody for a minor traffic violation such as appellant allegedly committed * * *."

that included the search were rooted in sham,[13] and accordingly we need not consider broader questions, whether in any event the search was outside the bounds of reasonableness for this offense in the absence of probable cause as to the robbery. The case must be remanded for further proceedings to give defendant a full hearing on his motion to suppress.

The remand proceedings may lead us to a thorny question. The prosecution may contend that even assuming there was a concealment or pretext in the way appellant was handled, there is no prejudicial error since there was, it may at least be contended, probable cause as to the robbery, sufficient to justify the warrantless search. Indeed it may even be that the officer referred only to the blocking of the highway because he deemed that enough, but that he would have unhesitatingly arrested defendant for the robbery, there being probable cause in his view, if the other offense had not been at hand. We intimate no view, except to note that this would lead us to the difficult question whether even that assumption would permit continuing the detention for purposes of arranging identification, and delaying presentation of defendant on preliminary examination. The issues are subtle and we do not choose to address them on a hypothesis of sham that may not be justified in fact. Exploration of those issues may become appropriate, depending on the nature and result of the remand proceedings.

Remanded for further proceedings.

BASTIAN, Senior Circuit Judge (concurring in part and dissenting in part):

I agree with the majority holding that no error was committed by the District Judge in refusing to sever the several counts of the indictment.

I do dissent, however, from the remand to the District Court. My reading of the record convinces me that the District Judge properly found, after holding an adequate hearing, that the arrest of the appellant was valid and was not a manufactured arrest. I feel further that the police procedure was not improper and that the evidence should not be suppressed. There seems to me to be no justification for a remand in this case.

I would affirm the judgment of the District Court.

---

13. Taglavore v. United States, *supra* note 12.