UNITED STATES of America

v.

Leo Ruiz TREVINO.

Crim. No. 73–H–414.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 26, 1974.

W. Boone Vastine, II, Asst. U. S. Atty., Houston, Tex., for plaintiff.

M. Gabriel Nahas, Jr., Houston, Tex., for defendant.

**75**

MEMORANDUM AND OPINION

SINGLETON, District Judge.

In this criminal action, defendant Leo Trevino is accused of possession of stolen bank money. By this motion defendant seeks to suppress as evidence, pursuant to Rule 41(e), Fed.R.Crim.P., a quantity of money seized in a warrantless search of his apartment. He also seeks to have suppressed any statements he is alleged to have made following the illegal seizure of this money on the theory that they would be "fruits of the poisonous tree."

The undisputed facts reflect that several officers of the Houston Police department, who possessed an arrest warrant for an Eric Waser, had received information that Mr. Waser could be found at defendant's apartment. The officers went to defendant's apartment and knocked on the door. When no one responded to the knock, two of the officers went to the manager's office to get a key—one officer stayed at the door. A short time thereafter, defendant opened the door. The officer showed defendant the arrest warrant for Eric Waser and asked if he were there. Defendant answered that he was not. By this time the other two officers had returned to the apartment.

It was the officers' testimony that with defendant's consent they began a search of the apartment, *for Mr. Waser.* During this "person search" (United States v. Looney, 481 F.2d 31 (5th Cir. 1973) [No. 73–1171 decided July 6, 1973]), two officers looked inside a closet in a room identified by defendant as his. It was the officers' testimony that when they opened the closet door in search of Mr. Waser, they spotted a stack of money, bound in a rubber band, lying in "plain view" on a shelf about six feet high. They said the money was next to a briefcase on the same shelf. One of the officers seized the money and asked defendant to whom the money be-

longed. Defendant said that it was his. One of the officers took the money to his patrol car where he had a list of "bait money" that had been taken in the bank robbery. By matching serial numbers, it was discovered that part of the money was indeed part of the "bait money." Defendant was placed under arrest. The officers admitted searching the briefcase but maintained that the money was found in plain view and not in the briefcase.

It was defendant's testimony that the money was inside the briefcase and that the officers found the money after seizing the briefcase and searching it.

Without belaboring the point, this court, after observing the demeanor of each of the witnesses and weighing their testimony in the light of human experience, chooses to believe the defendant's version that the money was inside the briefcase when the officers found it.

■ The testimony is undisputed that the officers did not have a search warrant for defendant's apartment. This being so, the search is unreasonable per se and "there must be 'a showing by those who seek exemption [from the warrant requirement] that the exigencies of the situation made that course imperative.'" Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).

■ The requirement that the police seek prior approval of a search from a judicial officer is subject to "a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L. Ed.2d 576 (1967). In this case, the government relies on the "plain view" exception. Under this established exception, an officer may seize the fruits or instrumentalities of a crime which inadvertently come within the plain view of the officer who has a right to be in the position to have that view. Coolidge v. New Hampshire, *supra*.

■ Since this court believes the money was in the briefcase when it was found by the officers, the question becomes whether the officers were justified in searching the briefcase without a warrant.

Although not articulated, it appears to be the government's view that the officers had a right to look in the closet during their security search for *persons rather than things*. This view finds its support in the recent case of United States v. Looney, 481 F.2d 31 (5th Cir. 1973) [No. 73–1171, decided July 6, 1973]. Accord, United States v. Miller, 145 U.S.App.D.C. 312, 449 F.2d 974 (1970); United States v. Briddle, 436 F.2d 4 (8th Cir. 1970). But this does not prove enough. There was no testimony that the officers had any reason to believe that the suitcase was an instrumentality or fruit of the bank robbery. Therefore, the fact that the suitcase was in open view of the officers does not bring the search within the "plain view" exception. Coolidge v. New Hampshire, *supra*. It follows then, that the warrantless search and seizure here violated defendant's fourth amendment rights. And, for this reason, the "fruit" of the illegal search, the $1,133 seized from the briefcase, is inadmissible as evidence at his trial. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1080 (1961).

■ Defendant further seeks to suppress any statements he may have made to the agents of the government following the illegal seizure of the money. He grounds his motion on the "fruit of the poisonous tree" doctrine which had its genesis in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Generally speaking, evidence obtained either directly or indirectly as the result of prior lawless police activity cannot be used as evidence at a criminal trial.

This doctrine is derived from the logical application of the "exclusionary rule" of Mapp v. Ohio, *supra,* and simply im-

plements the desired objective first to deter lawless police activity, and more importantly in this court's mind, "the larger objective of safeguarding the integrity of our adversary system." Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (Justice Brennan, dissenting.)

However, the rule has its limitations. In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court made the following narrowing explanation of the rule:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

In this regard, the Supreme Court has recognized two ways in which evidence can be derived so that the primary taint is purged. These two limitations are sometimes referred to as (1) the "independent source" limitation and (2) the "dissipated taint" limitation. See, *e. g.*, Agius v. United States, 413 F.2d 915 (5th Cir. 1969). In this case we are primarily concerned with the "independent source" limitation, which was announced in the following language in Silverthorne Lumber Co. v. United States, *supra*:

> "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. *If knowledge of them is gained from an independent source they may be proved like any others,* . . . ." (Emphasis added.)

■ It is the government's position on this point that the admissions made by defendant were not a product of the search but rather were the product of an "independent source," that being the intervening independent act of a free will on the part of the defendant. At the suppression hearing defendant was asked by his attorney whether he would have made the admissions had the police not found the money in his apartment. He answered that he "probably would have." In light of this testimony, this court concludes that the admissions are not inadmissible by reason of the "fruit of the poisonous tree" doctrine.

■ It should be noted, however, that all the facts and circumstances surrounding the "admissions" have not been placed before the court. The suppression hearing was aimed primarily at the search question and whether the admissions were inadmissible by reason of the search. The broader question whether the admissions were voluntarily made was not dealt with except as the "fruit of the poisonous tree" doctrine was concerned. Before any admissions or confessions will be admitted into evidence at trial, they must pass muster of a Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908 (1964) hearing.

The motion to suppress is denied with respect to the "admissions" alleged to have been made. The motion is granted with respect to the $1,133 seized in the warrantless search of defendant's briefcase.