David M. **ROBINSON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 22213.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 10, 1969.

Decided Jan. 3, 1972.

Mr. Jay S. Weiss, Washington, D. C. (appointed by this Court) for appellant.

Mr. Robert C. Crimmins, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal emanates from a judgment, entered on the verdict of a jury, convicting appellant of twelve violations of federal narcotic laws.[1] The verdict followed a trial on an indictment charging three separate offenses for each of four alleged sales of narcotics to an

1. See note 2, *infra*.

undercover police officer.[2] The principal events giving rise to the prosecution were related at trial by Officer Thomas G. James, the undercover policeman. Since Officer James' version of the drug sales is contested only in his identification of appellant as the seller, it furnishes a convenient starting point for our consideration of the appeal.

Officer James carried out his undercover assignment from November 23, 1966, through the last week of April, 1967. During this period he bought narcotics from 24 individuals, and from some he made several purchases. The four sales attributed to appellant took place on January 5, 6, 10 and 13,[3] and each followed the same general pattern. All transactions took place in the presence of one Roy Brown, a paid police informant.[4] They transpired in the same locality[5] and covered periods ranging from five to twenty minutes.[6] Each transaction was for a few capsules,[7] was consummated at the same unit price,[8] and was paid for with police department advance funds. None of the drugs was sold in or from an original stamped package,[9] or pursuant to an order form.[10]

After each purchase, Officer James returned to his residence and made notes in which he recorded descriptive details which he later utilized in his identification of appellant. His notations included "a pock-marked complexion," "gold-capped front teeth," and items of Army-type attire.[11] The officer also conducted preliminary field tests on the capsules which denoted the presence of an opium derivative, and thereafter handed the capsules over to his supervisor, whom he met at a predetermined place. The capsules were promptly submitted to chemical analysis, which produced a positive result for each.

On April 20, 1967, approximately three and a half months after the first transaction and slightly more than three months after the last, appellant was arrested on a warrant, sworn out by Officer James on the previous day, charging him with each of the four sales. Officer James spent 30 to 45 minutes in appellant's company shortly prior to the arrest, and continued in undercover role for about a week thereafter.

That, in the main, coupled with Officer James' insistence that appellant was the seller, was the Government's case. Detective Joseph W. Somerville detailed Officer James' deliveries of the purchased capsules to him.[12] The custodial chain and the narcotic content of the capsules were completed by stipulation of counsel.[13] Detective Robert I. Bush described the events surrounding appellant's arrest.

---

2. Three charges were laid under 21 U.S.C. § 174 (1964), 26 U.S.C. § 4704(a) (1964) and 26 U.S.C. § 4705(a) (1964) for each of the four sales. Although all three sections have since been repealed, 84 Stat. 1291, 1292 (1970), the conviction is unaffected by that fact. 84 Stat. 1294 (1970).

3. The testimony sometimes referred to January 15 as the date of the last sale. We deem the variance immaterial.

4. See note 14, *infra*.

5. Two occurred in a sandwich shop, another in a grocery store in the same block, and the other in a moving car a few blocks away.

6. The officer estimated that the first three transactions took from five to ten minutes and the last about fifteen to twenty minutes.

7. The first purchase was of eight capsules, and the last three of four each.

8. The unit price was $2.50.

9. See 26 U.S.C. § 4704(a) (1964).

10. See 26 U.S.C. § 4705(a) (1964).

11. Appellant was later to admit at trial that he had served in the Army, that he had one gold tooth and that he had lost his two front teeth in a scuffle with police, which the latter denied.

12. Deliveries of the first and last purchases, he said, were made on the same day, and the others within two or three days.

13. The stipulation was to the effect that Detective Somerville delivered the capsules to a Government chemist who kept them until trial, and that the chemical analysis established that the capsules contained varying amounts of heroin hydrochloride.

Roy Brown, the informant, did not testify.[14]

Appellant manned the witness stand to deny that he ever sold narcotics to the undercover officer or anyone else. He testified that he could not state where he was on the dates in question, but recalled that during the period the sales took place he was employed at a service station. During the interval between the sales and his arrest, he said, the station had become defunct, and efforts to locate his former employer and co-workers were of no avail. The only other person, he continued, whom he could possibly have summoned to shed light on his then whereabouts was his sister who had since died. She, he claimed, was the one person who was sufficiently familiar with his work habits to testify as to where he was on the sale dates.

Appellant attacks his conviction on three grounds. He argues, first, that the statutory provisions upon which the conviction rested violated his Fifth Amendment due process and self-incrimination rights. These contentions are substantially the same as those recently analyzed and rejected in United States v. Burgess,[15] and we do not consider

them further. Appellant next argues that the delay of three to three and one-half months from the alleged commission of the crimes to the date of his arrest was unreasonable and prejudiced his defense. In Part I of this opinion we survey the landscape of problems stemming from delayed arrests in narcotics cases and, in Part II, we analyze the particular facts of this case in light of established doctrine and conclude that appellant's claim must fail. Appellant's last contention is that the trial judge erred in refusing to grant separate trials on the four violations with which he was charged. For reasons elucidated in Part III of this opinion we reach a contrary conclusion.

I

The recurring problem of delay between an alleged narcotics crime and the arrest of the accused arises from methods the Government must employ to unearth violations of that kind. The clandestine character of narcotics traffic makes the use of undercover policemen well nigh an absolute necessity.[16] Entree into the underworld of drug activity is most successfully gained by newer offi-

---

14. When the illicit transactions occurred, the informant was known to Officer James simply as "Roy." The officer later learned that his surname was "Brown," but he was no longer living at his accustomed abode when the trial was reached. The explanation of the informant's absence from the trial is seemingly found in the officer's testimony indicating that he did not know the informant's whereabouts and that "[t]he Narcotics Squad people lost track of him. . . ." No question emanating from the informant's failure to testify is raised on this appeal.

15. 142 U.S.App.D.C. 198, 201–203, 440 F. 2d 226, 229–231 (1970). This case was argued contemporaneously with Burgess and, as there, the constitutional contentions are addressed to the trial judge's instructions to the jury authorizing conviction under 21 U.S.C. § 174 and 26 U.S.C. § 4704(a) by resort to the inferences permitted by those sections, and to the requirement of a written order form imposed

by 26 U.S.C. § 4705(a). We deferred our decision herein initially, as in Burgess, to await the Supreme Court's action in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and thereafter pending our decision in Burgess, and we are further benefited by the intervening decision in Minor v. United States, 396 U.S. 87, 94–98, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969). The Supreme Court's opinions in Turner and Minor and our own in Burgess make it clear that appellant's due process and self-incrimination arguments must be rejected.

16. See Ross v. United States, 121 U.S.App. D.C. 233, 235, 349 F.2d 210, 212 (1965); Powell v. United States, 122 U.S.App.D.C. 229, 232, 352 F.2d 705, 708 (1965). Very much an exception in the line of narcotics delay cases in this circuit was Bey v. United States, 121 U.S.App.D.C. 337, 350 F.2d 467 (1965), where the undercover agent was an experienced member of the Federal Bureau of Investigation.

cers whose identification with the police force has not become known.[17] The efficient utilization of personnel working under cover demands extension of their anonymity for the periods during which the undercover assignments are carried out.[18] Since, as a practical matter, complaints can be publicized only after tours of duty are completed,[19] alleged violators are in the meantime left unaware that they will be charged.[20] It is not surprising, then, that delays, often of months, between alleged offenses and notification of charges—usually by arrest—have frequently come under scrutiny by this court. The judicial task, of course, is reconciliation of the competing needs of effective law enforcement and early notice to the accused-to-be of the impending accusation.[21]

On the basis of our supervisory power over criminal trials in this circuit, but recognizing the due process overtones of the problem, we have held that narcotics charges must be dismissed where the delay between the undercover agent's detection of the crime and notice to the accused of criminal charges is unreasonable and prejudicial to him. Ross v. United States [22] is the foundation case. We said there:

It is always to be remembered that the [delay] is a conscious act on the part of the police. That alone does not condemn it, because the Department is motivated solely by a purpose to enhance its effectiveness in the public interest. But the Constitution contemplates a separate interest in fair procedures for the citizen faced with the loss of his liberty by reason of criminal charges. When interests of this nature impinge on each other, as they have a way of doing, they must be accommodated. A balance must be struck, if one or the other is not to be sacrificed completely.[23]

█ Cases since *Ross* have attempted to strike the proper balance, mindful that "the risk of conviction of an innocent person" [24] "attributable to the process which led to the verdict of guilt" [25] is the central concern of the *Ross* ruling. Our numerous opinions in the field have addressed the problem in a great variety of factual circumstances. All cases agree that the two prime factors to be considered are the reasonableness of the delay and the resulting harm, if any, to the accused. Justification for delay is measured largely though not exclusively by the desirability of keeping the un-

17. See Ross v. United States, *supra* note 16, 121 U.S.App.D.C. at 235, 349 F.2d at 212; Woody v. United States, 125 U.S.App.D.C. 192, 193, 370 F.2d 214, 215 (1966). *Cf.* Bush v. United States, 126 U.S.App.D.C. 174, 176, 375 F.2d 602, 604 (1967).

18. See Roy v. United States, 123 U.S.App.D.C. 32, 33, 356 F.2d 785, 786 (1965); Salley v. United States, 122 U.S.App.D.C. 359, 360, 353 F.2d 897, 898 (1965); Powell v. United States, *supra* note 16, 122 U.S.App.D.C. at 232, 352 F.2d at 708.

19. As might be expected, the number of warrants procured upon the agent's emergence from cover may be fairly large. See Roy v. United States, *supra* note 18, 123 U.S.App.D.C. at 33, 356 F.2d at 786 (51 warrants); Powell v. United States, *supra* note 16, 122 U.S.App.D.C. at 231, 352 F.2d at 707 (102 warrants); Jackson v. United States, 122 U.S.App.D.C. 124, 125, 351 F.2d 821, 822 (1965) (25 warrants); Ross v. United States, *supra* note 16, 121 U.S.App.D.C. at 235, 349 F.2d at 212 (51 warrants).

20. See Ross v. United States, *supra* note 16, 121 U.S.App.D.C. 235–236, 349 F.2d 212–13; Powell v. United States, *supra* note 16, 122 U.S.App.D.C. at 234–235, 352 F.2d at 710–711 (dissenting opinion).

21. See, *e. g.*, Godfrey v. United States, 123 U.S.App.D.C. 219, 221, 358 F.2d 850, 851 (1966); Powell v. United States, *supra* note 16, 122 U.S.App.D.C. at 232, 352 F.2d at 708.

22. *Supra* note 16.

23. 121 U.S.App.D.C. at 236, 349 F.2d at 213.

24. Daniels v. United States, 123 U.S.App.D.C. 127, 130, 357 F.2d 587, 590 (1966) (dissenting opinion) (footnote omitted).

25. Woody v. United States, *supra* note 17, 125 U.S.App.D.C. at 194, 370 F.2d at 216 (footnote omitted).

dercover agent's identity secret to enable him to track down as many narcotics traffickers as possible while he is useful.[26] While some amount of delay is administratively inevitable, and by the same token is legally permissible, courts must consider the adverse effects of delay upon the accused.[27] The rough rule of thumb the cases indicate is that delays of four months or less ordinarily necessitate no detailed judicial exploration of the underlying reasons.[28] This limit is, of course, an effort toward a practical accommodation of the competing governmental and individual interests, and presupposes that a shorter period is unrealistic. In particular cases, however, this basic assumption may not hold. Thus, where the agent emerges from cover within the four-month period, the Government will be required to make a diligent effort to find and notify the accused promptly thereafter.[29]

■■ Any averment of prejudice—or, as sometimes called, "special circumstances"—necessitates a showing intensely dependent on the facts of each case. While it is hard to draw too many generalizations from the decided cases, two broad categories of special circumstances have been recognized. The first, and the most common, embraces those cases in which the accused complains that the delay damaged his ability to present his defense. The burden is upon him to come forward with "a plausible claim"[30] of prejudice, and a frequent claim is that he cannot remember where he was during the short period of time the narcotics transaction consumed, usually some months before.[31] The length of the delay, even if ordinarily reasonable, is obviously relevant in assessing injury of this sort. Any inference that harm did result is negated when the accused testifies in detail,[32] or brings forward an alibi witness,[33]

26. See Mills v. United States, 149 U.S. App.D.C. ——, —— ——, 463 F.2d 291, 299–301 (Jan. 3, 1972). See also text *supra* at notes 16–20.

27. *E. g.*, Lee v. United States, 125 U.S. App.D.C. 126, 127 n. 2, 368 F.2d 834, 835 n. 2 (1966).

28. Dancy v. United States, 129 U.S.App. D.C. 413, 415, 395 F.2d 636, 638 (1968); Woody v. United States, *supra* note 17, 125 U.S.App.D.C. at 196, 370 F.2d at 218; Worthy v. United States, 122 U.S. App.D.C. 242, 243, 352 F.2d 718, 719 (1965), vacated and remanded on other grounds, 384 U.S. 894, 86 S.Ct. 1961, 16 L.Ed.2d 1000 (1966). And see Godfrey v. United States, *supra* note 21, 123 U.S. App.D.C. at 221, 358 F.2d at 852 (2 months); Roy v. United States, *supra* note 18, 123 U.S.App.D.C. at 33, 356 F.2d at 786 (3½ months); Worthy v. United States, *supra* note 28, 122 U.S.App.D.C. at 243, 352 F.2d at 719 (4 months); Mackey v. United States, 122 U.S.App. D.C. 97, 98, 351 F.2d 794, 795 (1965) (2 months).

29. Mills v. United States, *supra* note 26, 149 U.S.App.D.C. at —— ——, 463 F.2d at 299–301; Godfrey v. United States, *supra* note 21.

30. Jackson v. United States, *supra* note 19, 122 U.S.App.D.C. at 126, 351 F.2d at 823, quoting Ross v. United States, *supra* note 16, 121 U.S.App.D.C. at 238, 349 F.2d at 215.

31. Cases in which this claim was made include Dancy v. United States, *supra* note 28, 129 U.S.App.D.C. at 414, 395 F.2d at 396; Woody v. United States, *supra* note 17, 125 U.S.App.D.C. at 194, 370 F.2d at 216; Powell v. United States, *supra* note 16, 122 U.S.App.D.C. at 231, 352 F.2d at 707; Jackson v. United States, *supra* note 19, 122 U.S.App.D.C. at 126, 351 F.2d at 823; Ross v. United States, *supra* note 16, 121 U.S.App.D.C. at 236, 349 F.2d at 213. "The people in this subculture simply do not have desk pads and social calendars to assist them in determining where they were at a particular time many months before." Powell v. United States, *supra* note 16, 122 U.S. App.D.C. at 235, 352 F.2d at 711 (dissenting opinion).

32. Cannady v. United States, 122 U.S. App.D.C. 120, 121, 351 F.2d 817, 818 (1965).

33. Lee v. United States, *supra* note 27, 125 U.S.App.D.C. at 127–128, n. 2, 368 F.2d at 835–836 n. 2; Morrison v. United States, *infra* note 34, 124 U.S.App.D.C. at 332, 365 F.2d at 523; Worthy v. United States, *supra* note 28, 122 U.S. App.D.C. at 243–244, 352 F.2d at 719–720; Powell v. United States, *supra* note 16, 122 U.S.App.D.C. at 233, 352 F.2d at 709. See also Dancy v. United States, *supra* note 28, 129 U.S.App.D.C. at 414, 415, 395 F.2d at 637, 638.

or perhaps even when he holds a steady job.[34] Another variation of the claim that the defense has suffered from the delay is the assertion that a material witness has become unavailable. Any loss of such a witness which is chargeable to the delay weighs heavily against the Government in these cases.[35]

Special circumstances comprising the second category are those related to the kind of proof the Government presents and the reliability of the techniques by which the accused is identified as the offender. Because of the conditions under which narcotics are usually traded, we have remained advertent to the lurking danger of misidentification. We have been particularly cautious when the only evidence is the uncorroborated testimony of an undercover agent who had but a single brief encounter with the alleged offender.[36] We have been even more prone to dismiss an indictment when the undercover agent did not know the seller before the sale, took only scanty notes, and identified him from pictures of narcotics suspects some time after the sale, than when more careful procedures have been followed.[37] We have, on the other hand, recognized that multiple contacts between agent and seller tend to strengthen any later effort by the agent to point out the guilty party.[38]

Our decisions lay down no rules as to the weight to be assigned to these factors; they call, instead, for judicial judgment of the most delicate type. *Ross* itself is just about the paradigm. The seven-month delay there was unnecessary because the undercover agent had reached the point where he was unnecessarily duplicating purchases. The accused made a plausible claim of prejudice; because of the long delay, he claimed he could not remember where he was at the time of the crime, and a witness who might have helped him could not remember the day in question either. Atop this, the proof offered by the Government was particularly suspect. The novice undercover agent claimed to have made only one purchase from the accused, and to have seen him only for ten minutes. The officer had sworn out 51 warrants and could not testify without his notes.

## II

We turn, then, to apply the foregoing principles to the facts before us. Officer James, the undercover agent, testified to four purchases of narcotics from appellant during the first two weeks in January, 1967. Since appellant was arrested on April 20, the delay was about three and one-half months.[39] The arrest followed expeditiously the officer's emergence from cover. We have no call to delve into the reasonableness of the police action in this case.[40]

Appellant seeks, rather, to bring himself within the *Ross* rule by alleging special circumstances. His primary contention is that his defense was impaired by the delay. Appellant took the stand

34. Morrison v. United States, 124 U.S.App. D.C. 330, 332, 365 F.2d 521, 523 (1966).

35. *E. g.*, Woody v. United States, *supra* note 17, 125 U.S.App.D.C. at 196, 370 F.2d at 218 (concurring opinion).

36. *E. g.*, Hardy v. United States, 127 U.S. App.D.C. 162, 165–171, 381 F.2d 941, 944–950 (1967) ; Woody v. United States, *supra* note 17, 125 U.S.App.D.C. at 197, 370 F.2d at 219; Jackson v. United States, *supra* note 30, 122 U.S.App.D.C. at 125, 351 F.2d at 822.

37. Compare Woody v. United States, *supra* note 17, and Hardy v. United States, *supra* note 36, with Dancy v. United

States, *supra* note 28, and Bey v. United States, *supra* note 16.

38. Lee v. United States, *supra* note 27, 125 U.S.App.D.C. at 128 n. 2, 368 F.2d at 836 n. 2 ; Morrison v. United States, *supra* note 34, 124 U.S.App.D.C. at 332, 365 F. 2d at 523 ; Bey v. United States, *supra* note 16.

39. The Government computes the delay at three months and one week, the time that elapsed from the last sale to the arrest. Since the first sale took place about ten days before the last, the computation of maximum delay is three months, two weeks and a day.

40. See text *supra* at notes 26–29.

at the trial and denied participation in the criminal activities; he testified further that he could not remember where he was on the days in question. We cannot reject out-of-hand his claim that he had forgotten his whereabouts when the drug transactions took place.

Appellant asserts that he had worked at a service station which went out of business before trial. He could not, he says, locate the owner of the station nor any of his co-workers for the trial. The record, however, demonstrates that appellant's counsel had interviewed the station's owner and could classify his testimony as no better than "inconclusive". Apparently no records were kept which could show whether appellant was working at the station when the crimes transpired, and it also appears that appellant worked only intermittently.

Appellant also avers prejudice from the death of his sister, with whom he was living at the time of the offenses, but we are not informed as to just when she died. There is, of course, a "slender hope"[41] that she might have been able to help the defense, but it may well be that she died during the interval between arrest and trial, and not, as in Woody v. United States,[42] at "an advanced stage of the delay" prior to appellant's arrest.[43] Beyond that, this case is further unlike Woody because there two witnesses were lost because of pre-arrest delay, one because of death and the other because an intervening arrest led him to invoke his self-incrimination rights instead of testifying.[44] The latter witness, the court was told, would have testified in direct contradiction to the undercover policeman.[45] The only claim appellant makes here is that his sister might, in some unelucidated manner, have helped him reconstruct his activities on the days in question. We conclude, then, that the probability of damage to appellant's ability to defend himself was not significant enough to warrant upsetting his conviction.

We think, too, that the quality of the Government's proof in the instant case demonstrates that there is little chance of misidentification. The undercover officer testified, with notes, to four separate purchases from appellant within a period of two weeks and in three different places.[46] The officer said that he spent five to ten minutes with appellant at each of the first three purchases, then spent 20 minutes with him in making the last purchase and, finally, discussed with him future narcotic purchases for over half an hour just before the arrest. It is true that the testimony reflects some confusion about the date of the last purchase[47] but, whatever inconsistency that testimony reflects, it detracts little from the Government's cause. The agent said that he made 24 arrests and claimed that he could remember all of the sellers from whom he made more than one purchase. His notes from the scene of the purchases included a description of appellant with gold-capped teeth, a description appellant meets at least partly. This case is far different from single-sale brief-encounter cases like *Ross* and *Woody*.

Since the delay here was not unreasonable, any harm to appellant's case slight, and the reliability of the Government's proof substantial, we reject the argument that the indictment should be dismissed.

### III

Appellant's remaining contention is that the denial of his motion for severance of the twelve-count indictment constituted error deteriorating the fairness of his trial. As we explained earlier, appellant was charged with three separate offenses in connection with each of

---

41. Woody v. United States, *supra* note 17, 125 U.S.App.D.C. at 197, 370 F.2d at 219 (concurring opinion).

42. *Id.*

43. *Id.*

44. *Id.*

45. *Id.* at 198, 370 F.2d at 220 (concurring opinion).

46. See text *supra* at notes 36–38.

47. See note 3, *supra.*

the four narcotics sales specified in the indictment, and was tried on all twelve counts simultaneously.[48] Appellant asserts no claim that the counts were improperly joined in a single indictment;[49] the argument is that he should have been relieved from potential harm stemming from the trial of so many accusations at one time.[50] In our view, however, an application of the governing principles, delineated in our opinions during the recent past, compels a different conclusion.

We have recognized that the trial of multiple counts jointly, though conducive to economy and expedition in criminal litigation, may in particular instances breed prejudice to the accused. One danger is that "the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged."[51] Another danger is that "the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find."[52] Still another may be "a latent feeling of hostility engendered by the charging of several crimes as distinct from only one."[53]

■■ At the same time, we have acknowledged that separate trials offer no panacea where evidence of each joined offense is admissible as to each of the

48. Text *supra* at note 2.

49. "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a).

50. "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . ." Fed.R.Crim.P. 14.

51. Drew v. United States, 118 U.S.App. D.C. 11, 14, 331 F.2d 85, 88 (1964). See also Bradley v. United States, 140 U.S. App.D.C. 7, 11 n. 12, 433 F.2d 1113, 1117 n. 12 (1969); Blunt v. United States, 131 U.S.App.D.C. 306, 311, 404 F.2d 1283, 1288 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1969).

52. Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 14, 331 F.2d at 88. See also Bradley v. United States, *supra* note 51, 140 U.S.App.D.C. at 11 n. 12, 433 F.2d at 1117 n. 12; Blunt v. United States, *supra* note 51, 131 U.S.App.D.C. at 311, 404 F.2d at 1288; Gregory v. United States, 125 U.S.App.D.C. 140, 144, 369 F.2d 185, 189 (1966), cert. denied. 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969).

53. Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 14, 331 F.2d at 88.

We have also recognized that the accused "may become embarrassed or confounded in presenting separate defenses," Drew v. United States, *supra* note 51, 118 U.S. App.D.C. at 14, 331 F.2d at 88, as where the accused desires to testify but to limit his testimony to less than all of the joined counts. Cross v. United States, 118 U.S. App.D.C. 324, 326, 335 F.2d 987, 989 (1964). In the case before us, appellant's boilerplate pretrial motion for severance stated that he might wish to do just that, but the thought seemingly perished before trial was reached. At the hearing on the motion, just prior to the commencement of trial, defense counsel made no mention of such a possibility, and at the trial appellant denied complicity in any of the narcotics transactions and attempted to set up an alibi for each. Compare Blunt v. United States, *supra* note 51, 131 U.S. App.D.C. at 312, 404 F.2d at 1289. Moreover, at no time did appellant make the informational proffer which our decisions require "to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying." Baker v. United States, 131 U.S.App.D.C. 7, 26, 401 F.2d 958, 977 (1968), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970) (footnote omitted). See also Bradley v. United States, *supra* note 51, 140 U.S. App.D.C. at 17–18, 433 F.2d at 1123–1124; Blunt v. United States, *supra* note 51, 131 U.S.App.D.C. at 312, 404 F.2d at 1289.

others, for in that event the accused could fare no better from a severance and trial of the severed counts independently.[54] We also have "found no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials"[55] since, "with a proper charge, the jury can easily keep such evidence separate in their deliberations and, therefore, the danger of the jury's cumulating the evidence is substantially reduced."[56] Thus, by our standard, no severance is required if "evidence of the joined offenses would be mutually admissible, or if not, the evidence is sufficiently 'simple and distinct' to mitigate the danger of cumulation."[57] And "in any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration."[58] We think that upon a separate trial of either of the four drug transactions alleged in the indictment,[59] evidence relating to the other three transactions would have become admissible, and that in any event the evidence was so uninvolved and so readily referable to the several offenses as to reduce the hazard of cumulation to the point of insubstantiality. We accordingly conclude that the trial judge did not err in favoring the needs of trial administration by denying the sought-after severance.[60]

■■■ To be sure, evidence indicating the accused's commission of an offense not on trial, because of its potential for prejudice, is generally to be excluded.[61] There are, however, situations wherein evidence having such a tendency would serve "some substantial, legitimate purpose"[62] in the case on trial, and thus may summon an exception to the general rule.[63] One established exception obtains where the other-offense evidence bears significantly upon

54. Bradley v. United States, *supra* note 51, 140 U.S.App.D.C. at 12, 433 F.2d at 1118; Blunt v. United States, *supra* note 51, 131 U.S.App.D.C. at 311, 404 F.2d at 1288; Baker v. United States, *supra* note 53, 131 U.S.App.D.C. at 23, 401 F.2d at 974; Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 16, 331 F.2d at 90. See also United States v. Leonard, 144 U.S.App.D.C. 164, 166, 445 F.2d 234, 236 (1971).

55. Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 17, 331 F.2d at 91. See also Baker v. United States, *supra* note 53, 131 U.S.App.D.C. at 23, 401 F.2d at 974.

56. Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 17, 331 F.2d at 91.

57. Baker v. United States, *supra* note 53, 131 U.S.App.D.C. at 23, 401 F.2d at 974.

58. Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 14, 331 F.2d at 88.

59. Appellant's motion did not specify just what sort of a severance he desired. We think a severance of counts by the four transactions alleged in the indictment would have marked the practical limit since for each transaction proved three independent offenses separately punishable would emerge. Gore v. United States, 357 U.S. 386, 388, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Kelley v. United States, 357 U.S. 386, 388, 78 S.Ct. 1280, 2 275 F.2d 10, 11 n. 1 (1960). See also Harris v. United States, 359 U.S. 19, 22–24, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); Blockburger v. United States, 284 U.S. 299, 301–304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

60. It is not contended, nor with mutual admissibility of the evidence could it hardly be, that appellant could be prejudiced purely and simply by the fact that the counts on trial numbered twelve. Compare, *e. g.*, Daly v. United States, 119 U.S.App.D.C. 353, 342 F.2d 932 (1964), cert. denied, 382 U.S. 853, 86 S.Ct. 102, 15 L.Ed.2d 91 (1965). The indictment there contained 27 counts, of which the Government dismissed six at the start of trial and another six at the close of its case, and the jury convicted on the remaining fifteen. We affirmed the conviction in toto.

61. *E. g.*, Freeman v. United States, 116 U.S.App.D.C. 213, 214, 322 F.2d 426, 427 (1963); Fairbanks v. United States, 96 U.S.App.D.C. 345, 347, 226 F.2d 251, 253 (1955).

62. Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 16, 331 F.2d at 90.

63. "Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident,

the identity of the perpetrator of the offense being tried, in which event it may properly be let in although it also associates the accused with other crime.[64] Just such an occasion, we believe, was presented here.[65]

The Government's case, as to all of the four alleged drug sales, rested crucially on the testimony of Officer James, the undercover agent. He was the only available Government witness to the transactions,[66] and consequently the only one who could have identified the seller. Proof beyond a reasonable doubt that appellant was the seller was, of course, as much a part of the Government's burden as was the establishment of any other essential element of the offenses. That the Government's task was real is mani-

fest from the fact that appellant, at the trial under review, took the witness stand to avow that he was not the seller, and to proffer something of an alibi for the times at which the offenses occurred. Thus identity of the seller loomed as the burning issue at any trial, joint or separate,[67] and with testimonial credibility so largely at stake, any evidence materially bolstering Officer James' identification of appellant could have critical importance in terms of the verdict.

These circumstances, we think, furnished an adequate predicate for invocation of the identity exception to the rule shunning evidence disclosing other crimes.[68] For Officer James' identifica-

---

(4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial." Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 16, 331 F.2d at 90.

64. Bradley v. United States, *supra* note 51, 140 U.S.App.D.C. at 13–14, 433 F.2d at 1119–1120; Eagles v. United States, 58 App.D.C. 122, 124, 25 F.2d 546, 548, cert. denied, 277 U.S. 609, 48 S.Ct. 603, 72 L.Ed. 1013 (1928). See also Drew v. United States, *supra* note 51, 118 U.S. App.D.C. at 16, 331 F.2d at 90, quoted *supra* note 63; Bracey v. United States, 79 U.S.App.D.C. 23, 27–28, 142 F.2d 85, 88–89, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). Cf. Martin v. United States, 75 U.S.App.D.C. 399, 400, 127 F.2d 865, 866 (1942). See also cases collected in 2 J. Wigmore, Evidence § 416 (3d ed. 1940).

65. Other decisions admitting in narcotics prosecutions evidence of other drug offenses include United States v. Smith, 343 F.2d 607, 609 (2d Cir. 1965); People v. Lewis, 208 Cal.App.2d 422, 25 Cal. Rptr. 298, 300 (1962); People v. Cervantes, 177 Cal.App.2d 187, 2 Cal.Rptr. 107, 108–109 (1960); People v. Cole, 29 Ill.2d 501, 194 N.E.2d 269, 271 (1963); People v. Lopez, 10 Ill.2d 237, 139 N.E. 2d 724, 725–726, cert. denied, 353 U.S. 975, 77 S.Ct. 1062, 1 L.Ed.2d 1138 (1957); Clark v. State, Tex.Cr.App., 398 S.W.2d 763 (1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 722, 17 L.Ed.2d 549 (1967).

66. See text *supra* at note 4 and note 14, *supra*.

67. Defense counsel arguing the motion for severance, who is not his counsel on appeal, specified identity as the single issue to be tried.

68. Clarity of analysis is promoted by carefully distinguishing two general types of situations which differ both factually and conceptually. The first involves an eyewitness to several offenses who identifies the accused as the perpetrator of each. If the offenses are tried separately, the witness' reference to particular details of the offenses not on trial may lend credence to his identification of the accused as the perpetrator of the offense on trial. The similarity or dissimilarity of the offenses, though perhaps of some value, is not particularly significant since the tie between the offense occasions is sought to be established by the eyewitness identification and not circumstantially by common features of the crimes. The case at bar presents a situation of this kind. Compare Hill v. United States, 135 U.S.App. D.C. 233, 234–235, 418 F.2d 449, 450–451 (1969), where we found it unnecessary to decide the point.

The second type of situation involves an effort to identify the perpetrator of the offense on trial simply by identification of the accused as the perpetrator of another offense which was so markedly similar as to warrant the conclusion that both offenses were committed by the same person. See Bradley v. United States, *supra* note 51, 140 U.S.App.D.C. at 14–15, 433 F.2d at 1120–1121. In instances of that kind, the link tying the two offenses

tion of appellant as the person who sold him narcotics on any one of the four occasions was very likely to be strengthened considerably by reference to certain of the circumstances involved in the other three.[69] To jurors, no less than to judges,[70] the reliability of an eyewitness identification is apt to increase as the opportunities for observation of the subject and mental retention of his image are broadened, and as the reasons for close scrutiny and accurate recollection become more special.[71] A witness who ventures an identification of a party simply on the basis of one encounter may well be believed, but the identification bids fair to command greater respect when accompanied by a showing that the witness encountered the party on other occasions, and that he had an inportant reason for studying and remembering his distinctive features.

Within Officer James' testimonial range lay sundry events calculated to fortify his identification of appellant at any separate trial. The officer made, not one, but four purchases of drugs from appellant. The first three transactions endured for five to ten minutes and the last for fifteen to twenty minutes, and after each he incorporated the seller's description into his written notes.[72] Additionally, he spent 30 to 45 minutes with appellant immediately prior to his arrest, in part in a discussion of future drug transactions. His official mission, as an undercover police officer, was not only to seek out traffickers in narcotics but also to keep a sharp mind and memory for the stimuli that could lead to their later identification.

■ In such distinctive circumstances, we believe that upon a separate trial of the counts relating to any one of the four drug transactions, these details from the other three would promise real assistance in the jury's evaluation of Officer James' identification of appellant.[73] We believe, too, that in this milieu the probative values of such evi-

---

to a single culprit is circumstantial, and proof of the factors establishing both crimes as the handiwork of one person is vital. A recent case of the latter type is United States v. Bussey, 139 U.S.App. D.C. 268, 432 F.2d 1330 (1970), where the evidence was held insufficient to forge the link.

69. Compare People v. Cole, *supra* note 65, 194 N.E.2d at 271. And, as Dean Wigmore has stated, "[o]n the *direct examination* a witness may properly be asked to specify the grounds for his recollection; because the circumstances which have contributed to fix or to strengthen it may show how the witness is justified in his confidence or assertion, and the party offering him is entitled to the benefit of this." 3 J. Wigmore, Evidence § 730 (Chadbourn rev. (1970) (emphasis in original).

70. See note 71, *infra*.

71. This we have frequently recognized in our decisions exploring the constitutional validity of eyewitness identification confrontations. See, *e. g.*, United States v. Kemper, 140 U.S.App.D.C. 47, 50–51, 433 F.2d 1153, 1156–1157 (1970), and cases cited in notes 26–28 thereof.

72. The descriptive details recorded included "a pock-marked complexion," "gold-capped front teeth," and items of Army-type

clothing differing somewhat from transaction to transaction.

73. Since we conclude that application of the identity exception would be in order, we need not inquire into the applicability of other exceptions such as common scheme or plan, see Robinson v. United States, 366 F.2d 575, 578 (10th Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 717, 17 L.Ed.2d 547 (1967); People v. Marshall, 226 Cal.App.2d 243, 37 Cal. Rptr. 887, 888 (1964); State v. Skinner, 251 La. 300, 204 So.2d 370, 383 (1967), cert. granted, 391 U.S. 963, 88 S.Ct. 203, 20 L.Ed.2d 876 (1968), cert. denied as improvidently granted, 393 U.S. 473, 89 S.Ct. 704, 21 L.Ed.2d 684 (1969); Fairman v. State, 83 Nev. 137, 425 P.2d 342, 343 (1967); Clark v. State, *supra* note 65, 398 S.W.2d at 767, or knowledge of the narcotic content of the capsules sold, see United States v. Smith, *supra* note 65, 343 F.2d at 608–609; United States v. Dornblut, 261 F.2d 949, 951 (2d Cir. 1958), cert. denied 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959); Morris v. United States, 123 F.2d 957, 959 (5th Cir. 1941); McClanahan v. State, Tex. Cr.App., 394 S.W.2d 499, 503 (1965).

dence would suffice to serve "a substantial, legitimate purpose" warranting admission.[74] And since upon any separate trial some testimonial items from the transactions not on trial would have become admissible,[75] we find no prejudice stemming from the denial of the motion for severance.[76]

There is yet another consideration lending support to our conclusion that the trial judge's refusal to sever did not operate to enhance other-crimes prejudice to appellant. As we have observed, a severance of counts is not required where the evidence, even when not mutually admissible in separate trials, is so simple that the jury should encounter no substantial difficulty in properly confining its treatment within zones of relevance.[77] "[T]he very essence of this rule is that the evidence

be such that the jury is unlikely to be confused by it or misuse it,"[78] and that, we believe, was clearly so here. The four narcotics sales for which appellant was blamed were not only uncomplicated transactions but were so markedly similar that each was virtually a duplicate of all the rest.[79] Moreover, the single factual issue arising with respect to the four was identity, with one witness for the Government affirming and one witness for the defense denying that appellant was the seller, and the jury's principal task was a credibility resolution. We are unable to perceive any significant probability that the jury could have become confused by the evidentiary presentation on either side. We need not decide whether this case would qualify under the "simple and distinct" principle in the absence of the mutual

---

74. See text *supra* at note 62–63.

We are mindful of United States v. Bussey, *supra* note 68, where this court ruled that testimony that the accused held up an auto shop could not be allowed to support his identification at his trial for a nearby holdup minutes later, but we think that case does not indicate a reversal here. As we read the decision, it rested on its own circumstances and not on the theory that testimony aiding identification is flatly prohibited to the extent that it incidentally reveals another crime. Compare Hood v. United States, 125 U.S. App.D.C. 16, 18–19, 365 F.2d 949, 951–952 (1966). Indeed, *Bussey* acknowledged that "[h]ad defense counsel attempted on cross-examination to cast doubt on the witnesses' recollection that Bussey was in the auto shop at 4 o'clock, an opportunity might have arisen for them to explain the reasons they definitely remembered that he was there." 139 U.S.App.D.C. at 273, 432 F.2d at 1335. Thus *Bussey* does not differ in principle from cases in some number holding that the defense's stance warranted testimony corroborating the prosecution's version notwithstanding its tendency to disclose other criminal conduct. See, *e. g.*, Hood v. United States, *supra*; Bracey v. United States, *supra* note 64, 79 U.S.App.D.C. at 28, 142 F.2d at 88; United States v. Stocker, 273 F.2d 754, 757, 75 A.L.R.2d 703 (7th Cir.), cert. denied, 362 U.S. 963, 80 S.Ct. 879, 4 L.Ed.2d 878 (1960). See also Eagles v. United States, *supra* note 64, 58 App. D.C. at 124, 25 F.2d at 548.

In the case at bar, defense counsel's cross-examination of Officer James embraced an understandable effort to discredit his avowed recollection of appellant as a party from whom he purchased narcotics. In our view, the balance of probative value and potential does not disfavor mutual testimonial reference to the four drug sales on the issue of identification. See text *infra* following note 81. Still less could we say that the trial judge did violence to his discretion in "weigh-[ing] prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration." See text *supra* at note 58.

75. The rule that severance is not required where evidence of the joined offenses would be mutually admissible in separate trials "does not require that every item of evidence relating to one offense be admissible in a separate trial for the other, but rather looks in a broader sense to whether the rules relating to 'other crimes' evidence have been satisfied." Baker v. United States, *supra* note 53, 131 U.S. App.D.C. at 24, 401 F.2d at 975 (footnote omitted). See also Bradley v. United States, *supra* note 51, 140 U.S.App.D.C. at 12, 433 F.2d at 1118.

76. See text *supra* at note 54.

77. See text *supra* at notes 55–58.

78. Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 19, 331 F.2d at 93.

79. See text *supra* at notes 3–10.

admissibility of the four drug sales which we have already found. We do say, however, that on the balance of probative value and harm to the accused, the situation before us is of a piece with those which our previous decisions have held to present inadequate claims of resulting prejudice.[80]

 In upholding the declination to sever in this case, we disclaim once again any thought "that every item having some tendency to show identity is automatically to be made available to the jury."[81] As we have heretofore admonished,

> An inexorable requirement, obtaining as to all evidence unveiling another offense, is that its probative virtues must outweigh its prejudicial proclivities. . . . Thus "other offense" evidence proffered on an issue of identity must promise a real contribution in the process of proof of identity, for otherwise its help will be surpassed by its hurt. A reasonable need for the evidence must exist, and for as much detail as is to be let in, lest its value be exceeded by its damage. In sum, admissibility depends upon a plus-quality in terms of its evidentiary capability in balance with its harmful portent.[82]

We caution, then, that our decision herein is not to be taken as a license for admission of evidence tending to show merely that an identification witness on some other occasion saw the accused engaging in other criminal conduct. In the case at bar there was much more than just another occasion for observation; the number of such occasions, their duration, the opportunities for scrutinizing they afforded, the imperative reason for scrutiny, and the recordation of descriptive details all combined to add peculiar value to Officer James' identification of appellant. In sum, we sustain the ruling denying appellant's motion for severance because we find such a plus-quality in evidentiary items 'emanating from each of the four drug transactions as to warrant mutual admissibility, and too little likelihood of jurors' misunderstanding of the evidence to override the husbandry of a single trial.

The judgment of appellant's conviction is

Affirmed.

FAHY, Senior Circuit Judge (concurring in part, dissenting as to affirmance):

The scholarly opinion of Judge Robinson for the court has my concurrence except in its treatment of the question of severance in Part III of the opinion. The trial was on a twelve count indictment involving four alleged sales of narcotics on four different dates, each sale leading to charges of three separate offenses under the narcotics laws. Prior to trial, appellant moved for relief from prejudicial joinder. The motion was denied. This I think was reversible error.[1]

---

80. Compare Hill v. United States, *supra* note 68, 135 U.S.App.D.C. at 234–235, 418 F.2d at 450–451 (one housebreaking and two robbery counts from single transaction) ; Baker v. United States, *supra* note 53, 131 U.S.App.D.C. at 24, 401 F.2d at 975 (four counts, charging income tax offenses, pertaining to different transactions or tax years) ; Gray v. United States, 123 U.S.App.D.C. 39, 40, 356 F.2d 792, 793 (1966) (two robbery counts from different transactions) ; Langford v. United States, 106 U.S.App.D.C. 21, 22, 268 F.2d 896, 897 (1959) (two robbery counts from different transactions) ; Maurer v. United States, 95 U.S.App.D.C.

389, 390, 222 F.2d 414, 415 (1955) (two counts of accepting bribes from different transactions) ; Dunaway v. United States, 92 U.S.App.D.C. 299, 303, 205 F.2d 23, 26–27 (1953) (three housebreaking counts from different transactions). *Cf.* Drew v. United States, *supra* note 51, 118 U.S.App.D.C. at 19–20, 331 F.2d at 93–94, where the probability that the jury may have become confused remained high.

81. Bradley v. United States, *supra* note 51, 140 U.S.App.D.C. at 13, 433 F.2d at 1119.

82. *Id.* at 13–14, 433 F.2d at 1119–1120.

1. No additional motion was required under Rule 14, Fed.R.Crim.P. The Govern-

I do not understand the court to conclude that there was no prejudice in lumping in one trial the evidence in support of all twelve charges growing out of the four sales of narcotics. The dangers arising from a joint trial of multiple crimes is pointed out by the court at pp. 855, *supra.* Nevertheless the court, as I understand, holds that the obvious prejudice to the defendant which accompanies such a joint trial must be accepted because were a separate trial had for each of the four sales evidence of the other sales would be admissible to support the testimony of Officer James identifying defendant as the one who made the sale involved in the separate trial. Additionally, the court relies on a rule which in some circumstances permits joint trial of offenses when evidence of each is simple and distinct, even though all the evidence of one would not be admissible in a separate trial of the other.

*First.* I agree that in a separate trial involving any one of the four sales, in turn involving the decisive issue of identity of the alleged offender, evidence of other encounters of Officer James with the accused would be admissible as tend-

ing to verify the correctness of the officer's identification of the accused. I do not agree, however, that the right to introduce evidence of other encounters in aid of identification also carries with it a right of the prosecution on direct examination to adduce from the officer evidence that the encounters involved other sales of narcotics in violation of the laws.[2] If it be said that the added detail of criminal circumstances enhanced the credibility of the identification by underscoring for the jury the reason why Officer James remembered defendant, for the same reasons such detail increased unnecessarily the prejudice to the accused. The purpose of the identification exception would be served without reciting that the encounters with the defendant involved the commission of three similar crimes.[3] Deference to the general rule excluding evidence of other offenses would seem to require that the identification exception not be permitted to open the door to prejudice which is unnecessary to serve the purpose of the exception.[4]

*Second.* As indicated above, the court also seek support in the rule permitting

---

ment does not contend otherwise, nor does the court now rely upon the absence of such a motion.

2. McCormick recognizes the principle that evidence of other criminal conduct may be admissible to prove identity, but he says "that a need for proving identity is not ordinarily of itself a ticket of admission" and that such evidence usually is admitted under another theory, such as to show a larger criminal plan or motive, clearly not present in the case at bar. McCormick, Law of Evidence § 157, at 330 (1954). *But see* Bradley v. United States, 140 U.S.App.D.C. 7, 433 F.2d 1113 (1969) ; Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

3. Such a rule would not preclude the police from making several buys from a seller of narcotics to verify their identification. Indeed, Officer James testified at trial that of persons from whom he had made buys of narcotics he was able to

identify positively only those from whom he had made more than one purchase.

4. None of the authorities cited by the court, notes 54 and 71, *supra,* calls for the application in this case of the identification exception in a manner which admits in evidence on direct examination the criminal aspects of the other encounters of Officer James with appellant. Each case must be evaluated on its facts and circumstances in light of the principles discussed in the court's opinion ; and these principles, when examined in more depth, include the considerations advanced in this dissent. Moreover, it does not appear from the opinions in Blunt v. United States, 131 U.S.App.D.C. 306, 404 F.2d 1283 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1969), and Bradley v. United States, *supra,* that the approach advanced by me in connection with the identification exception was considered.

joint trial of offenses when the evidence of each is sufficiently simple and distinct to avoid prejudice because "the jury is unlikely to be confused" or to "misuse" the evidence of one in considering the others. In the first place, the court's conclusion that the evidence of each transaction was simple and distinct is not borne out by the record. Both the Government's argument to the jury and the District Court's instructions treated the evidence relating to defendant's identification as if a single issue were involved—whether he was the party to all four transactions.[5] To conclude that the jury did not misuse the evidence—that is, did not cumulate the identifying testimony as to each of the four transactions to reinforce the identifying testimony as to the others—is to me incredible.

In the second place, the court's primary basis for finding no impermissible joinder is that evidence of each narcotics transaction would be admissible in separate trials to support the agent's identification of defendant, from which it is said to follow that a severance would not relieve defendant from the prejudice. Yet, this basis for permitting the joint trial contradicts the notion that evidence of each offense was so simple and distinct that the jury in the joint trial would not use that with respect to one in considering the others.

Moreover, it is well settled that, if the other-crime evidence appears to come within an exception to the general rule excluding it, such as the identification exception relied upon by the court, nevertheless the evidence will be excluded if its prejudice to the accused is not outweighed by its probative value to the prosecution. United States v. Bussey, 139 U.S.App.D.C. 268, 432 F.2d 1330 (1970); Bradley v. United States, *supra*.

This balancing of probative value and prejudice is a condition to the admissibility of the evidence. Abandoning the simple and distinct exception as an independent basis for the joint trial, for, as pointed out above, this would contradict the interrelationship of the evidence relied upon to support identification, nevertheless the court, paradoxically it seems to me, holds that in balancing probative value and prejudice to defendant, the evidence, because simple and distinct, is not sufficiently prejudicial to require exclusion. This amounts to saying that other-crime evidence, although useful to reinforce identification testimony, is nevertheless so simple and distinct as to minimize prejudice. Such a position is logically untenable. Similar evidence which is reinforcing cannot simultaneously be distinct, regardless of its simplicity. In no case which applies the simple and distinct principle is the evidence supporting one of the offenses so nearly identical to the evidence supporting the other offenses as in the present case. The heart of the simple and distinct principle is the disfavor with which the courts view mutual reinforcement—*i. e.*, cumulation. Whatever may be the usefulness of the balancing process in other cases, the situation before us is one in which the prejudice to defendant increases in direct proportion to probative value.

*Third.* The court in the last paragraph of footnote 74 refers to the discretion which it attributes to the trial judge in "weigh[ing] prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration," citing Drew v. United States, 118 U.S.App.D.C. at 14, 331 F.2d at 88. In *Drew* the language referred to occurs in an outline of princi-

---

5. Drew v. United States, 118 U.S.App. D.C. at 19–20, 331 F.2d at 93–94 (1964), seems inconsistent with the position of the court that there was no misuse here. In

*Drew* the court concluded that joint trial was not permissible though the offenses were far more distinct than those in the present case.

ples deemed relevant to the problem of joinder. *See also* Bradley v. United States, *supra.* The context surrounding the *Drew* quotation indicates to me that the court was warning against the use of economy and expedition in judicial administration as a balancing factor where there is prejudice. The court in *Drew* gave no weight whatever to such economy and expedition in holding that the joinder there of two separate felonies in a single trial was prejudicial error. Indeed, I think we must move away from considering that prejudice to the right of the individual to a fair trial must be permitted in aid of economy and expedition in the administration of justice. The courts should pursue attainment of those ends by other means available.

The simple fact is that as a matter of common sense no abstract evidentiary rule obscures the prejudice that attached to the use in each offense of the evidence of the four offenses in the joint trial. This prejudice is not offset by any acceptable rationale which justifies imposing upon the defendant an exception to the rule which excludes at trial for one crime evidence of a different one. There is no need to analyze the cases cited by the court, *see, e. g.,* footnote 80, *supra,* in which reversals have not followed from joint trials of more than one offense. Several of the cases fall within the principle to which I adhered in Dunaway v. United States, 92 U.S.App. D.C. 299, 303, 205 F.2d 23, 26–27. Moreover, no case controls another. The issue is always one of preserving the fairness of the trial, a judgment to be exercised on the facts of each case.[6]

While otherwise concurring, I respectfully dissent from affirmance for the reasons stated.

---

6. *See* McCormick, Law of Evidence § 157, at 332 (1954).

It is rather ironic that all sentences in the present case run concurrently, as though but one offense occurred. Conviction in one or more separate trials would no doubt have entailed no different sentence. The prejudice, however, comes from the fact that if the offenses had been tried separately the identification evidence would appropriately have been freed of the criminal connotations of the separate encounters.