**UNITED STATES of America**

**v.**

**Marquette PIERCE.**

**Crim. No. 1740–72.**

United States District Court,
District of Columbia.

Feb. 7, 1973.

John Clarke, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Theodore Christensen, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This case came on for trial and prior thereto, counsel presented for the consideration of the Court two motions as follows: The defense moved to dismiss the indictment on the ground that defendant's constitutional rights to due process and speedy trial were impaired under several decisions in our United States Court of Appeals.[1] The government advised the Court that under the circumstances of this case and the definitions contained in the Controlled Substances Act, 21 U.S.C. § 802, that it would move to omit the "purchasing agent" defense instruction[2] sometimes given in cases presented under the prior Act, 26 U.S.C. § 4705(a).

From the testimony on the motion to dismiss, the Court finds the facts as follows:

The narcotics transaction on which the government relies in this prosecution

---

1. United States v. Mills, 149 U.S.App.D.C. 345, 463 F.2d 291 (1972) ; United States v. Robinson, 148 U.S.App.D.C. 58, 459 F.2d 847 (1971) ; Godfrey v. United States, 123 U.S.App.D.C. 219, 358 F.2d 850 (1966) ; Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).

2. "If the defendant was requested by a law enforcement official or his agent to obtain narcotics, thereupon undertook to act in the prospective purchaser's behalf rather than his own, purchased the drugs from a third person, with whom he was not associated in selling narcotics, and delivered them to the buyer, the defendant would not be a seller of narcotics. If you have a reasonable doubt whether or not the defendant sold the narcotics, you must find him not guilty."

was said to have been made on February 11, 1972, at about 2:30 P. M. The warrant on the basis of which defendant was arrested was obtained from the United States Magistrate on or about May 3rd, 1972. In the interim between February 11 and May 3rd the police officer who made the buy was serving in an undercover capacity. Following the obtaining of the arrest warrant, Officer Leroy T. Harris the police officer supervising the undercover officer, personally made three attempts to arrest the defendant in June by going to the defendant's mother's home in nearby Maryland with a Deputy U. S. Marshal. On one of these visits the officer told the defendant's mother, after identifying himself, that he had a warrant for the defendant's arrest and advised defendant's mother that the defendant should turn himself in. Defendant took no action in this respect, nor was there any evidence to the contrary, although defendant's mother was present in court. Officer Harris also sought the cooperation of the Prince George's County Police, who accompanied him on his visits to the mother's home.

Officer Davis remained undercover until the last week in July. The defendant was arrested on another charge in the State of Maryland on the 6th of July. Defendant relies on the *Ross* case, emphasizing the due process rationale of this case rather than the speedy trial requirement. It is noted that there are two periods of delay here, the period between the sale and the date on which the arrest warrant was obtained and secondly, the period between that date and the date of arrest.

■ The government took the position that after obtaining a warrant, the supervising police officer, still wishing to protect as far as possible the identity of the undercover officer, justifiably within the *Ross* doctrine, delayed his efforts to execute the warrant for approximately a month. The efforts heretofore mentioned which were made to serve the warrant in June were somewhat impaired by reason of the fact that the defendant lived at his mother's home in the State of Maryland and the police officers were required to act in conjunction with the United States Marshal and the local police. Under these special circumstances, the Court sees no violation of the due process or speedy trial aspects of *Ross* and its progeny. An undercover period of four months is not per se violative of due process nor is it a violation of defendant's rights that an additional month elapsed before defendant was arrested. While police efforts to arrest defendant were not accomplished on an expedited basis, it cannot be said that the delay was unreasonable nor can it be said that the conduct of the police was lacking in diligence. United States v. Mills, 149 U.S.App.D.C. 345, 463 F.2d 291 (1972).

■ In making the determination whether to dismiss the indictment under the *Ross*[3] doctrine, the Court must make an objective evaluation of the government's evidence as well as whether the defendant was prejudiced by the delay between the sale and the arrest. Here, it appears that the police undercover officer and the defendant were well known to each other from high school, hence the possibility of mistaken identity is practically nonexistent.[4] While defendant has no obligation to present any evidence, he has offered nothing to indicate that because of the delay he has no recollection of the incident. To delay until

---

3. In *Ross*, there was a seven months delay and the undercover officer had seen Ross for only about ten minutes. On the undisputed facts in this case, we do not have the "lurking danger of misidentification."

4. In *Mills*, 463 F.2d at page 301, the Court of Appeals said: "Our decisions have accordingly recognized that an appraisal of prejudice stemming from unwarranted delay in getting such prosecutions under way must take account of the reliability of the procedures by which the accused was identified as the culprit and the caliber of the Government's proof on that score."

June, efforts to make an arrest in order to protect the anonymity of the undercover officer is not unusual nor unreasonable [5] on these facts. A more critical period is presented in June once the police elected to serve the arrest warrant. Whether under the circumstances of this case the conduct of the police is to be considered diligent is the question. The undisputed testimony is that the arresting officer went to the home of defendant's mother on three separate occasions with U. S. Marshals and Maryland police. He told the mother his purpose in being there and suggested that defendant give himself up. While this result was not required, it nevertheless is some kind of notice—it at least constitutes the means whereby defendant could have learned the details of the charge. Under all the circumstances it is my considered opinion that the delay is not so protracted or prejudicial or so likely to produce the result of mistaken identity as to justify the dismissal of the indictment.

The second legal point brought to the attention of the Court was raised by the government with respect to the purchasing agent doctrine. Government counsel called attention to the phraseology adopted by Congress in Title II, Section 102 ¶¶ (8) and (11) of the Controlled Substances Act, 21 U.S.C. § 802. Since the charge in this case is the distribution of a controlled substance, statutory definitions are important. Paragraph 11 reads as follows:

The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance. The term "distributor" means a person who so delivers a controlled substance.

Paragraph 8 reads as follows:

The terms "deliver" or "delivery" mean the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship.

Government counsel, accordingly, argues that Congress effectively has deleted the purchasing agent defense by these definitions. The legislative history of the Act supports this view.[6] In the case of Lewis v. United States, 119 U.S.App.D. C. 145, 337 F.2d 541 (1964), the Court, speaking through Circuit Judge (now Chief Justice) Burger, concluded that failure to give the purchasing agent instruction was fatal to a charge brought under 26 U.S.C. § 4705(a), the sale charge under prior legislation. The Court held, however, that failure to give the purchasing agent instruction under Section 4704(a), which includes distribution, was not error and affirmed the conviction of violating 26 U.S.C. § 4704(a). Also, with respect to the charge brought under 21 U.S.C. § 174, the charge of facilitating the concealment of a narcotic drug, the Court held that such a charge did not require the purchasing agent instruction and affirmed the conviction brought under this section.

█ For the foregoing reasons, the Court denies the motion to dismiss the indictment and holds that the purchasing agent instruction, usually given with respect to charges under 26 U.S.C. § 4705(a), should not be given under the Controlled Substances Act charge of distribution.

5. United States v. Mills, *supra.*

6. In the Summary and Analysis of the bill prepared for the Honorable Wilbur Mills, Chairman, Committee on Ways and Means, the Attorney General's report sets forth at page 208 the following with respect to the meaning of the terms "distribute" and "distributor":

"Distribute" and "Distributor" are defined to cover *anyone* who transfers, or attempts to transfer, a controlled dangerous substance. (Emphasis supplied.)

This immediately follows the definitions of "dispense" and "dispenser." These terms cover the *lawful* transfer of a controlled dangerous substance to the ultimate user by a practitioner.

In its definition of "deliver," the Act itself specifically excludes the agency relationship as a defense.

The defense and the government, with the consent of the defendant, having waived trial by jury and having stipulated as to additional facts,[7] the Court finds the defendant guilty as charged.

7. STIPULATION: It is agreed and stipulated to between the Government, defense counsel and the defendant that if called to testify the following witnesses would testify as follows:

1. Officer William T. Davis would testify that he was assigned as an undercover police officer from January 24, 1972, to and including July 29, 1972. During that time period, specifically from January 28 to and including February 23, 1972, he was acquainted with defendant, Marquette Pierce. Officer Davis knew defendant from high school and was cognizant of his place of employment and home address. On August 2, 1972, Officer Davis identified defendant at a Police Department lineup.

Officer Davis would testify that on February 11, 1972, the officer asked defendant if the defendant could get from one Joyce Smith a quarter ounce of pure heroin for the officer. Defendant said he could and after making a phone call took the officer to 1443 Chaplin Street, N.W. The defendant went upstairs outside of the officer's view for a few minutes (approximately 5 minutes) and returned informing the officer "she had to wait for an individual driving a Buick who would be there in a few minutes." At that point defendant and the officer waited a few minutes and then drove to the rear of 1443 Chaplin Street where they saw a Buick. Defendant again left the officer's view and returned to the premises with the $300.00 which the officer gave him, returning to the officer with a tin foil packet of white powder, approximately 8 minutes later. Defendant than (sic) delivered (handed over) that packet to Officer Davis. Officer Davis subsequently gave that packet to his control officer, Officer Leroy Harris.

2. Officer Leroy Harris would testify that he received the packet from Officer Davis and on February 14, 1972, delivered it to the Bureau of Narcotics and Dangerous Drugs.

3. Chemist Henry F. Blum of the Bureau of Narcotics and Dangerous Drugs would testify that he analyzed the substance in that packet and found it to contain 6,890 milligrams of 3.3% heroin.

/s/ ————————
Defense Counsel
/s/ ————————
Defendant
/s/ ————————
Government Counsel

January 9, 1973
Date
APPROVED
Gasch, J.